**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WISCONSIN**

---

Ian Nelson, Brandon Wagner,

On behalf of Themselves and
all others similarly situated

Case No: 3:25-cv-00464

Plaintiffs,

v.

Sub-Zero Inc.,

Defendant.

---

## SECOND AMENDED COMPLAINT

---

Plaintiffs, by their attorneys, for their Second Amended Complaint against Defendant state as follows:

1. This is an individual and collective action under the Fair Labor Standards Act, and an individual and class action under Wisconsin law by Plaintiffs, on behalf of themselves and other current and former hourly non-exempt employees of Sub-Zero Inc., to seek redress for Sub-Zero's failure to pay them straight time and overtime wages required by law.

## JURISDICTION AND VENUE

2. This court has subject matter jurisdiction under 29 USC §216(b) and 28 U.S.C. §1331 because Plaintiffs allege violations of the Fair Labor Standards Act, 29 U.S.C. §201 et seq.

3. This Court has supplemental jurisdiction over the Plaintiffs' claims brought under Wisconsin law pursuant to 28 U.S.C. §1367 because in each instance the corresponding FLSA and Wisconsin law claims advanced by this Complaint are based on the same set of operative facts, so that the FLSA and Wisconsin law claims together form the same case or controversy.

4. This Court has personal jurisdiction over Sub-Zero because it is a Wisconsin corporation that conducts manufacturing and other business activities within this District.

5. Venue is proper in this district pursuant to 28 U.S.C. §1391(b)(2) because all events that gave rise to the claims described by the Complaint occurred within this district.

## THE PARTIES

6. Named Plaintiffs are adult residents of the State of Wisconsin. Named Plaintiff Wagner is a current employee of Defendant Sub-Zero, while Named Plaintiff Nelson is a former employee of Defendant Sub-Zero. Named Plaintiffs' opt-in consent forms were filed with the Court at the same time the original Complaint was filed with the Court.

7. Defendant Sub-Zero is a Wisconsin corporation that operates facilities in Madison and Fitchberg, Wisconsin to manufacture refrigeration equipment.

8. Sub-Zero by virtue of its operations within Wisconsin is an employer within the meaning of Wis. Stat. §109.01(3). Sub-Zero is also an employer engaged in interstate commerce within the meaning of the FLSA, 29 U.S.C. §203, by, for example, purchasing equipment, materials and supplies from outside Wisconsin, and by advertising and selling its products through the channels of interstate commerce, and throughout the United States and beyond. At all relevant times, Sub-Zero has had annual gross volume of business at or above $500,000.

## FACTS

9. Named Plaintiff Nelson received an offer of employment from Defendant Sub-Zero before he began working for Defendant. The offer of employment included an offer for a signing bonus of $2,500, half of which was payable when Nelson completed his probationary period, and the remaining half of which was supposed to be payable after Nelson successfully completed six months of employment.

10. Nelson received a bonus of $1,250 at the beginning of his employment with Sub-Zero, which according to his offer letter was payable to him after he completed his probationary period, so that the $1,250 was compensation for his hours worked during his probationary period.

11. Nelson received a bonus of $1,250 on November 2, 2023, which according to his offer letter was payable to him after he completed his first six months of employment, so that the $1,250 was compensation for his hours worked during his first six months of employment but after he completed his probationary period.

12. Even though Nelson worked more than 40 hours per week and received overtime pay during both his first 60 days of employment, and during his first 6 months of employment after the first 60 days, Sub-Zero did not include the $1,250 bonuses Nelson received in computing his regular rate that it then used to compute his rate of overtime pay for these workweeks.

13. When Plaintiffs worked hours of voluntary overtime that exceeded 40 hours per week, whether on weekdays or on Saturdays, they received compensation for their voluntary overtime hours worked equal to the rate for the overtime hours worked, plus any applicable shift differentials, plus an amount equal to ½ of their weekly regular rate.

14. When Plaintiffs worked mandatory overtime, which only occurred on Saturdays, they received pay for 8 of their hours worked in a lump sum amount that Sub-Zero labeled mandatory overtime pay. ("Mandatory Overtime Pay"). Mandatory Overtime Pay may be paid to employees for the first hour worked on the day and the first 40 hours worked during the week. The hourly rate for Mandatory Overtime Pay, which is higher than both Plaintiffs' base rate and their regular rate for the week, only changes if the Plaintiff's base wage rate changed, but not as the Plaintiff's regular rate of pay changed from week to week.

15. During weeks that Plaintiff worked more than 8 hours on Saturdays, they received mandatory overtime pay for no more than 8 of the hours worked on Saturdays, so that overtime hours worked on Saturdays in excess of 8 hours were paid at same lower rate that Plaintiffs would receive for working voluntary overtime on weekdays.

16. Sub-Zero only paid Mandatory Overtime Pay to Plaintiffs for their hours worked on Saturdays because the applicable collective bargaining agreement only permitted Sub-Zero to force Plaintiffs to work mandatory overtime on Saturdays, so that it was not possible for Plaintiffs to work mandatory overtime on weekdays.

17. Sub-Zero paid Mandatory Overtime Pay to its employees because the overtime was mandatory rather than because the overtime occurred on Saturdays. Mandatory Overtime Pay compensated employees for the inconvenience of being forced to work overtime, and as a penalty imposed upon Sub-Zero for requiring its employees to work overtime, rather than because the overtime was worked on Saturdays. Sub-Zero did not pay a premium to Plaintiffs for working on Saturdays, as illustrated by the fact that voluntary overtime was paid at the same rate whether worked on weekdays or on Saturdays.

18. Sub-Zero posted mandatory overtime assignments at least 8 days in advance, so that Mandatory Overtime Pay is prearranged compensation for anticipated extra work.

19. Sub-Zero included only a portion of rather than the entire amount of Mandatory Overtime Pay in computing Plaintiffs' regular rates of pay. Plaintiffs received no additional overtime premium pay on top of Mandatory Overtime Pay for hours for which they received Mandatory Overtime Pay, that were worked after they already worked 40 hours for the week.

20. On a weekly basis, Sub-Zero paid incentives to its hourly non-exempt employees, including the Named Plaintiffs. On the employees' paychecks these incentives would be described as "CAL", "NP Safety Scan" and "Critical Process."

21. Each incentive is paid on an hourly basis, and only for up to the first 40 hours paid each week; so that no portion of any incentives was compensation for the Plaintiffs' hours worked in excess of 40 hours each week.

22. Sub-Zero correctly included the incentives described by Paragraph 20 of the Second Amended Complaint in computing its employees' regular rate of pay, because the incentives were announced to the employees in advance to induce them to improve their work quality and safety, so that it had surrendered in advance its discretion as to both the fact and amount of the payments.

23. During workweeks when Plaintiff received incentive pay, their regular rate for the week would always be higher than the base rate plus applicable shift differentials that they received for their overtime hours worked.

24. Because the incentives described by Paragraph 20 of the Second Amended Complaint were only paid for the first 40 hours worked each week, they are neither compensation for the Plaintiffs' hours worked over 40 per week; nor are creditable toward compensation owed to Plaintiffs for their hours worked over 40 per week because the incentives must be included in the Plaintiffs' regular rates of pay, and are not premiums described by Sections 207(e)(5) through (7) of the FLSA.

25. Sub-Zero therefore paid to Plaintiffs less than 1.5 times the regular rate for their hours worked over 40 per week, during workweeks in which they received straight time pay for 40 hours, received overtime pay, and received incentive pay.

26. By a check dated August 3, 2022, Sub-Zero made a lump sum payment to Named Plaintiff Wagner, which was computed as the average wage rate earned by Sub-Zero employees of about $26 per hour, multiplied by 4.1 percent, and multiplied by 2,080 hours. Because only the straight time wage rate received by the employees was used to compute the average hourly wage rate used to compute the amount of the bonus, no overtime premium pay was built into the lump sum payments.

27. The lump sum payments were paid pursuant to an Addendum to the 2016-2025 collective bargaining agreement covering Sub-Zero employees, which stated that if the Consumer Price-Index Wage Earners increased by more than five percent over the preceding 12 months, the union and Sub-Zero will meet to discuss an appropriate wage adjustment for the following year.

28. During negotiations between the Union and Sub-Zero pursuant to the Addendum, Sub-Zero offered to make a lump sum payment to bargaining unit members in lieu of granting a wage increase to bargaining unit members for the following year, which it would have to rescind at the end of the year.

29. Sub-Zero notified bargaining unit members by a memorandum dated July 28, 2022 that the lump sum payment will be paid to them to help offset the costs of inflation. Since the lump sum payment was intended to provide additional compensation to bargaining unit members for the year after it was paid, Sub-Zero surrendered its discretion as to both the fact and amount of the lump sum payment at the beginning of the period for which Wagner received the lump sum payment.

30. As early as September of 2021, Sub-Zero announced to the union and the bargaining unit its plan to pay a lump sum cost-of-living adjustment to bargaining unit members in December of 2021. Upon information and belief, after the Union filed a grievance challenging

Sub-Zero's right to pay the cost-of-living adjustment in a lump sum, Sub-Zero delayed the implementation of, but did not modify its plan to pay a lump sum cost-of-living adjustment of some amount to bargaining unit members.

31. During the 52 weeks after he received the August 3, 2022 lump sum payment, Named Plaintiff Wagner had workweeks during which he received straight time pay for 40 hours worked, received overtime pay for his hours worked over 40 for the week, and did not receive double time overtime pay. Wagner's regular rate of pay used to compute his overtime pay for such weeks did not include a pro-rata portion of the lump sum payment he received on August 3, 2022.

32. Since Sub-Zero could not compute the amount of overtime pay owed on the lump sum payment until the beginning of August of 2023, when it knew the total number of hours that Wagner worked between August 3, 2022 and August 2, 2023, Wagner's claim for additional overtime pay on the lump sum payment did not accrue until August of 2023.

33. Named Plaintiff Nelson was employed as a Maintenance Assistant by Sub-Zero.

34. Sub-Zero treated the Maintenance Assistant position and the Maintenance Mechanic position as separate classifications, so that it would post openings for, interview and select employees to work as Maintenance Assistants.

35. Sub-Zero required Maintenance Assistants to complete a Mechanic Training Program to become Maintenance Mechanics; so that Maintenance Assistants who failed to timely complete training to become Maintenance Mechanics within three years are not permitted to remain in the Maintenance Assistant classification.

36. Completing the Mechanic Training Program requires Maintenance Assistants to complete five required courses during a period no longer than three years through either prior

industrial experience, or by taking the courses at Madison Area Technical College ("MATC"). Upon information and belief, neither MATC nor Sub-Zero offered Maintenance Assistants the option to test out of any of the required courses.

37. During the two years before the original Complaint was filed in this case, and while he was a Maintenance Assistant, Named Plaintiff Nelson completed two mandatory courses required by the Mechanic Training Program. Nelson was in the process of completing another course required by the Mechanic Training Program when he was terminated by Sub-Zero.

38. Maintenance Assistants do not need to complete any of the courses required by the Mechanic Training Program to continue to work as Maintenance Assistants. Nor did Sub-Zero ever explain to its Maintenance Assistants that any of the courses were prerequisites for becoming Maintenance Assistants that they were permitted to complete after they began working as Maintenance Assistants.

39. Sub-Zero did not count time spent by the Maintenance Assistant to attend any of the five required courses to become Maintenance Mechanics as hours worked, for the purpose of determining their eligibility to receive overtime pay.

40. During the time that Nelson attended required courses to become Maintenance Mechanics, he regularly worked 40 or more hours per week during this time period, so that counting his class attendance time as additional hours worked would have increased the number of hours for which he was entitled to receive overtime pay.

## COLLECTIVE ACTION ALLEGATIONS

41. Plaintiffs brings their First Claim for Relief, pursuant to the Fair Labor Standards Act, on their own behalf and on behalf of all other similarly situated Sub-Zero employees who were subject to uniform Sub-Zero policies that (a) did not include sign-on

bonuses, which were promised with their offers of employment but were not payable until they completed their probationary period or later, in computing their regular rates of pay; (b) excluded a portion of Mandatory Overtime Pay from their regular rate of pay; (c) computed overtime pay at a rate lower than 1.5 times the regular rate for overtime workweeks during which the employees received incentive pay; (d) excluded a lump sum paid to employees on August 3, 2022 from the computation of their regular rates of pay for the subsequent year; and (e) did not count as hours worked time spent by Maintenance Assistants attending classes for courses that they must complete to become Maintenance Mechanics.

42. Named Plaintiffs are similarly situated to other members of the proposed collective in that Plaintiff Nelson received sign-on bonuses that were promised by his offer of employment but were not payable to him until he completed his probationary period or later; both Plaintiffs received Mandatory Overtime Pay that was not included in computing their regular rate of pay; both Plaintiffs received overtime pay for hours worked over 40 per week during workweeks in which they received both incentive pay and straight time pay for 40 hours worked during the week; Sub-Zero did not include the lump sum payment that Plaintiff Wagner received in August of 2022 to compute his overtime pay for workweeks during the subsequent year in which he received 40 hours of straight time pay, overtime pay, and no double-time pay; and Plaintiff Nelson would have been credited with more overtime hours worked, had his time spent attending classes that he must complete to become a Maintenance Mechanic been counted as hours worked.

## CLASS ALLEGATIONS

43. Plaintiffs seeks to represent the following classes pursuant to Rule 23 of the Federal Rules of Civil Procedure:

> All hourly non-exempt employees employed by Sub-Zero who, for the time period after of June 3, 2023 either (a) received a sign-on bonus that was promised in their offer letter but were not payable to them until they completed their probationary period or later, (b) received Mandatory Overtime Pay for working mandatory overtime during a week; (c) received incentive pay during one or more workweeks; or (d) received a lump sum payment in August of 2022.

Plaintiffs are not pursuing a class action for the Maintenance Assistant training time claim because they do not believe any class consisting of only Maintenance Assistants who took classes required by the Mechanic Training Program would be sufficiently numerous.

44. Persons in each of the subclasses identified above are so numerous that joinder of all members is impracticable. Upon information and belief, Sub-Zero at any given time would employ up to 800 hourly non-exempt employees so that there are likely hundreds of members in proposed subclasses (a) through (d).

45. Commonality is satisfied when the Court can decide Sub-Zero's liability to class members by answering common questions including (a) Whether an employer surrendered in advance its discretion as to both the fact and amount of a sign-on bonus by promising the employee a sign-on bonus in the offer of employment, which was not payable to the employee until months later; (b) even if any portion of the Mandatory Overtime Payment is a weekend premium, whether Wisconsin law authorizes the exclusion of any weekend premium pay from the regular rate; (c) whether Mandatory Overtime Payment is additional compensation for hours worked on Saturdays or additional compensation for the inconvenience of being forced to work mandatory overtime; (d) whether incentive pay employees received can either count as, or can be used to offset time and a half overtime pay owed to the employees; (e) whether the lump sum payment employees received in August of 2022 was a non-discretionary bonus; and (f) whether the lump sum payment was intended to provide compensation to employees for the year after it

was paid, so that the employees' claim for overtime pay on the lump sum payment did not accrue until August of 2023.

46. Plaintiffs' claims are typical of the claims of members of each of the subclasses in that Plaintiff Nelson received sign-on bonuses that were promised to him in his offer of employment but was not payable to him until he completed his probationary period and his first 6 months of employment, respectively; both Plaintiffs received Mandatory Overtime Payments and incentive payments, and Plaintiff Wagner received a lump sum payment in August of 2022; and Plaintiffs would have received more overtime pay for hours worked over 40 per week, had Sub-Zero included the sign-on bonuses, the full amount of Mandatory Overtime Payments, or the August 2022 lump sum payments in computing Plaintiff's regular rates of pay, or computed their overtime pay as 1.5 times the regular rate for workweeks during which which they received incentive pay for their first 40 hours worked.

47. Plaintiffs will fairly and adequately protect the interests of the Rule 23 class in that at least one of them was victimized by each uniform policy at issue in this case, they have a financial incentive to obtain answers of "yes" to each common question outlined in Paragraph 45 of the Second Amended Complaint, their prosecution of this lawsuit will not harm the concrete interests of any other class members, their claims are not subject to any unique defenses when compared to the claims of other class members, and they have retained counsel experienced in representing employees, including unionized employees, in complex wage and hour litigation.

48. Common questions of liability outlined in Paragraph 45 of the Second Amended Complaint will predominate over questions of damages because the Plaintiffs are challenging the manner that Sub-Zero used its own records to compute overtime pay for its employees, so that

damages can be computed for class members by applying uniform formulas to Sub-Zero's own records, and without the need for any individualized proceedings on damages.

49. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Defendants' common and uniform policies and practices denied each proposed subclass the full amount of overtime wages to which they are entitled. The damages suffered by the individual Wisconsin Unpaid Wage Class members are likely in the range of hundreds or at most a few thousand dollars per year and are too small to generate a contingency fee that could justify bearing the risks of contingency fee litigation, so that the alternative to class wide litigation is no litigation at all, resulting in class members recovering none of the overtime wages that they are owed. Proceeding as a class action will also obviate the need for unduly duplicative litigation that might result in inconsistent judgments about the legality of Defendant's overtime computation practices.

## COUNT I. CLAIM FOR OVERTIME PAY UNDER THE FLSA.

50. Plaintiffs re-allege, and incorporate by reference, the allegations contained in paragraphs 1- 49 of the Second Amended Complaint.

51. By describing the timing and amount of sign-on bonuses it will pay to Nelson in the offer letter that it sent to him, Sub-Zero surrendered its discretion as to both whether to pay a sign-on bonus to Nelson and the amount of the sign-on bonus to pay to Nelson months before, rather than near the time when the bonuses became payable to him.

52. The sign-on bonuses therefore must be added to the regular rate for the time periods during which they were earned, so that the first $1,250 bonus should be included in computing Nelson's overtime pay for overtime hours worked during his probationary period;

while the second $1,250 bonus should be included in computing Nelson's overtime pay for the portion of his first six months of employment after his probationary period.

53. During each week Plaintiffs and other employees worked mandatory overtime on Saturdays, Sub-Zero paid to them no more than 8 hours of Mandatory Overtime Pay, even when Plaintiffs worked more than 8 hours on Saturdays.

54. Sub-Zero paid Plaintiff at the same rate, which is lower than the Mandatory Overtime Pay rate, whether they worked voluntary overtime during hours outside their regular workdays on weekdays, or they worked voluntary overtime on Saturdays.

55. Mandatory Overtime Pay that Sub-Zero paid to Plaintiffs do not qualify for exemption under Sections 207(e)(6) because they were paid to compensate employees for the inconvenience of being forced to work overtime, and to penalize Sub-Zero for forcing employees to work overtime, rather than to compensate employees for working on Saturdays.

56. Mandatory Overtime Pay Sub-Zero paid to Plaintiffs do not qualify for exemption under Section 207(e)(5) in that Plaintiffs received mandatory overtime pay for hours worked that were within the first 8 hours on the day, and within the first 40 hours worked for the week; so that Mandatory Overtime Pay was not paid to Plaintiffs because they worked more than 8 hours per day or 40 hours per week.

57. Sub-Zero therefore violated the FLSA by including only a portion of rather than the entirety of Mandatory Overtime Pay in computing Plaintiff's regular rates of pay. Moreover, because no portion of Mandatory Overtime Pay qualify for exemption from the regular rate, no portion of Mandatory Overtime Pay can be used to offset overtime pay owed to Plaintiffs for other overtime hours worked during the same workweek that they received Mandatory Overtime Pay.

58. Alternatively, if the Court finds Sub-Zero must for each overtime hour worked pay to employees overtime premium pay equal to ½ of the regular rate, because no portion of Mandatory Overtime Pay qualify as premium pay paid to the employee for working in excess of 8 hours per day, 40 hours per week, or for working on weekends, the employees are entitled to additional overtime premium pay equal to ½ of the weekly regular rate for each hour for which they received Mandatory Overtime Pay, which was worked after the employees had already worked 40 hours for the week.

59. Because Sub-Zero paid incentives to Plaintiffs for no more than 40 hours each week, no matter how many hours they worked for the week, the entirety of the incentives are compensation for Plaintiffs' first 40 hours worked each week, so that no portion of the incentives can count as compensation for Plaintiffs' hours worked in excess of 40 each week.

60. Because no portion of the incentive pay is compensation for Plaintiffs' overtime hours worked, during each week in which Plaintiffs received straight time pay for 40 hours worked and received incentive payments, Plaintiffs' regular rate of pay including the incentive payments is higher than the base rate plus shift premiums that they earned for their overtime hours worked.

61. Because the incentive payments are non-discretionary bonuses that Sub-Zero correctly included in computing Plaintiffs' regular rates of pay, rather than premiums that qualify for exemption under Sections 207(e)(5) through (7) of the FLSA, no portion of the incentives are creditable against overtime pay owed to Plaintiffs pursuant to §207(h)(2) of the FLSA.

62. As a result, Sub-Zero failed to pay to Plaintiffs overtime pay equal to 1.5 times the regular rate, during workweeks in which they received straight time pay for 40 hours worked and received incentive payments, by computing their overtime pay as the base rate for their

overtime hours worked plus any applicable shift premiums plus overtime premium pay equal to ½ of the regular rate.

63. Both pursuant to the collective bargaining agreement with the union, and because it was offered in lieu of a wage increase for the following year, the lump sum payment that Sub-Zero paid to Plaintiff Wagner in August of 2022 was additional compensation paid for his hours worked between August 3, 2022 and August 2, 2023.

64. By issuing a memorandum to the employees dated July 28, 2022 to announce the payment of the lump sum payment, Sub-Zero surrendered its discretion as to both the fact of and amount of payment of the lump sum payment at the beginning of the time period that the lump sum payment compensated employees for, so that the lump sum payment is a non-discretionary bonus that must be included in computing Plaintiff Wagner's regular rates of pay between August 3, 2022 and August 2, 2022.

65. Alternatively, Sub-Zero announced its plan to make a lump sum payment to account for the larger than expected increase to the cost of living in September of 2021, and only delayed rather than changed its plan to make the lump sum payment to the employees between September of 2021 and August of 2022. Sub-Zero therefore surrendered its discretion as to the fact of lump sum payment in September of 2021, so that the payment is a non-discretionary bonus even if it was intended to compensate Wagner for his hours worked for the year before August 3, 2022.

66. Sub-Zero therefore violated the FLSA when it failed to include a pro-rata portion of the lump sum payment in computing Plaintiff's regular rate of pay for each workweek during the year covered by the lump sum payment.

67. Named Plaintiff Nelson was in the position of a Maintenance Assistant when he took required courses that he must complete to become a Maintenance Mechanic.

68. The required courses were not prerequisites for Plaintiff Nelson becoming a Maintenance Assistant because he did not need to complete any of the courses to work as a Maintenance Assistant, and because Sub-Zero never told him that the mandatory courses were prerequisites for the Maintenance Assistant position that he could complete after he was hired.

69. Because Nelson could not remain a Maintenance Assistant if he failed to timely complete training to become a Maintenance Mechanic, and because Nelson did not have the option to test out of the courses, Nelson's continued employment as a Maintenance Assistant would be adversely affected if he did not timely complete required courses to become a Maintenance Mechanic, so that Nelson's attendance at such required courses was involuntary.

70. Plaintiff Nelson's time spent attending classes for courses that he was required to complete to become a Maintenance Mechanic therefore must count as hours worked; so that he is entitled to additional overtime compensation for his additional hours worked over 40 per week after his time spent attending the classes is counted as hours worked.

71. Because Sub-Zero had no reasonable grounds for believing that its timekeeping and employee compensation policies at issue in this lawsuit complied with the FLSA, Plaintiffs are entitled to liquidated damages on all additional overtime pay that they should have received under the FLSA.

72. Because Sub-Zero was fully aware of its obligation to pay its employees full overtime pay for their hours worked over 40 per week yet failed to adequately investigate whether its timekeeping and overtime compensation policies and practices complied with the FLSA, Plaintiffs are entitled to the application of a three-year statute of limitations for willful violations.

73. Plaintiffs are additionally entitled to their reasonable attorneys' fees incurred in prosecuting this first cause of action.

**COUNT II. CLAIM FOR UNPAID WAGES UNDER WISCONSIN LAW.**

74. Plaintiffs re-allege, and incorporate by reference, the allegations contained in paragraphs 1 - 73 of the Second Amended Complaint.

75. Because non-discretionary bonuses must be included in the Wisconsin regular rate, Sub-Zero similarly violated Wisconsin law by failing to include the Sign-on bonuses in computing Nelson's regular rate of pay for the time periods for which he received the bonus payments.

76. Because Wisconsin law requires computing overtime pay as time and a half the regular rate but does not contain any provisions that authorize excluding premium pay from the regular rate, the full amount of Mandatory Overtime Pay Plaintiffs received must be included in the regular rate even if it included premiums for working on weekends.

77. Alternatively, even if the Court infers there is an equivalent provision to Section 207(e)(6) of the FLSA in Wisconsin law, the full amount of Mandatory Overtime Pay Plaintiffs received must be included in their Wisconsin regular rates, for the same reasons that the full amount of Mandatory Overtime Pay Plaintiffs received must be included in their FLSA regular rates.

78. Because Plaintiffs received incentive pay for only their first 40 hours worked each week, none of the incentive pay can count as compensation for Plaintiffs' hours worked in excess of 40 hours each week.

79. Because Wisconsin law does not contain a provision equivalent to Section 207(h)(2) of the FLSA, and does not contain any other provisions that authorize employers to use compensation paid to the employee for the first 40 hours worked to offset overtime pay owed to the employee, incentive pay Plaintiffs received cannot be used to offset time and a half overtime pay owed to them.

80. Therefore, during workweeks in which Plaintiffs received straight time pay for 40 hours, received some overtime pay for hours worked over 40, and received incentive pay, Sub-Zero failed to pay to Plaintiffs overtime pay equal to 1.5 times the regular rate of pay.

81. Alternatively, if the Court finds an employer can pay overtime pay equal to ½ of the regular rate of pay for each overtime hour worked, Plaintiffs are owed additional overtime premium pay equal to ½ of the regular rate for each hour for which they received Mandatory Overtime Pay, which they worked after they had already worked over 40 hours for the week, since the rate for Mandatory Overtime Pay does not include any premium pay to compensate Plaintiffs for working more than 8 hours per day, 40 hours per week, or for working on weekends.

82. The lump sum payment that Plaintiff Wagner received in August of 2022 is a non-discretionary bonus under Wisconsin law for the same reasons that it is a non-discretionary bonus under the FLSA, i.e. because Sub-Zero announced its decision to pay the bonus to employees at or near the beginning of the time period to be compensated by the bonus.

83. Sub-Zero therefore is required to include a pro-rata portion of the August, 2022 bonus in computing Plaintiff Wagner's regular rate of pay for the year paid for by the bonus; thus entitling Wagner to additional overtime pay for each workweek during the year in which he received straight time pay for 40 hours worked, received overtime pay, and did not receive double time overtime pay that can be used to offset overtime pay owed to him.

84. Because the FLSA and Wisconsin law apply similar rules for determining whether training time must count as hours worked, Plaintiff Nelson's time spent attending classes for classes that he must complete to become a Maintenance Mechanic was involuntary and compensable under Wisconsin law, for the same reasons that the class attendance time was involuntary and therefore must count as hours worked under the FLSA.

85. When an employee has not received any compensation for some hours worked, Wisconsin law entitles the employee to hourly compensation at the rate agreed upon with the employer or the minimum wage, whichever is higher, for such unpaid hours. Nelson is therefore entitled to straight time compensation, at his regular wage rate excluding the shift premium, for each hour of class attendance time that must count as hours worked, even if he did not work more than 40 hours for the week.

87. Nelson additionally is entitled to additional overtime pay for each additional overtime hour he worked, once his compensable time spent attending classes is counted as hours worked.

88. By failing to pay to Plaintiffs all straight time and overtime wages required by Wisconsin law within 31 days of when the work was performed, Defendants violated Wis. Stat. §109.03(1), so that Plaintiffs may bring suit under Wis. Stat. 109.03(5) to recover all straight time and overtime wages owed to them, plus 50% of the unpaid wages as liquidated damages allowed by Wis. Stat. §109.11(2), plus their reasonable attorneys' fees and costs incurred in prosecuting this action pursuant to Wis. Stat. §109.03(6).

WHEREFORE, Plaintiffs respectfully request the Court to enter an order that:

a. Finds that Sub-Zero is liable to them for all overtime pay that they should have received had they received credit for all of their hours worked, and had it computed their overtime pay using the method permitted by the FLSA; plus 100% liquidated damages;

b. Finds that Sub-Zero is liable to them for all straight time pay and overtime pay they should have received under Wisconsin law, plus 50% liquidated damages;

c. Award relief similar to prayer for relief subparagraph a for each collective member who is similarly situated to them;

d. Award relief similarly to prayer for relief subparagraph b for each member of the proposed class;

e. Awards to them reasonable attorneys' fees and costs incurred in maintaining and prosecuting this action on an individual, collective, and class basis; and

f. Such other and further relief as the Court deems just and proper.

Dated this 15th day of September, 2025.

/s/Yingtao Ho
Yingtao Ho
Email: vh(&,previant.com
Attorney for Plaintiffs
The Previant Law Firm S.C.
310 W. Wisconsin Avenue, Suite 100MW
Milwaukee, WI 53203
Telephone: 414-271-4500
Fax: 414-271-6308