IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

IAN NELSON and BRANDON WAGNER,
individually on behalf of all others similarly situated,

|  |  |  |
|---|---|---|
| | Plaintiffs, | OPINION and ORDER |
| v. | | 25-cv-464-jdp |
| SUB-ZERO, INC., | | |
| | Defendant. | |

---

Plaintiff Brandon Wagner works for defendant Sub-Zero, Inc., a refrigerator manufacturer; plaintiff Ian Nelson used to work for Sub-Zero. Plaintiffs allege that Sub-Zero miscalculated their regular rates of pay and their overtime pay, resulting in unpaid wages and overtime. They bring claims under the federal Fair Labor Standards Act (FLSA) and state wage laws. They seek to represent similarly situated employees in a collective under the FLSA and a class under Rule 23 of the Federal Rules of Civil Procedure.

Several motions are before the court, but the main one is Sub-Zero's motion to dismiss part of plaintiffs' second amended complaint for failure to state a claim for relief. The court will grant Sub-Zero's motion on plaintiffs' claims related to premium pay, but the court will deny the motion on plaintiffs' claims related to Sub-Zero's cost-of-living-adjustment payments.

ANALYSIS

The basic requirements of both the Fair Labor Standards Act (FLSA) and Wisconsin's wage laws are straightforward: employers must pay their employees a minimum hourly wage and an overtime rate of one and one-half times the employees' regular hourly rate. In many cases, the application of those basic rules is straightforward. But in this case, plaintiffs assert

that subtle differences between how the FLSA and state wage laws define an employee's "regular rate" make the calculation of overtime pay more complicated. For reasons explained in this opinion, the court concludes that the term "regular rate" has the same definition under the FLSA and under Wisconsin's wage laws.

## A.  The meaning of "regular rate"

The FLSA's definition of the term "regular rate" is somewhat complex. The basic definition is simple: under the FLSA, an employee's "regular rate" generally includes all compensation he receives from his employer. The complexity comes from the exceptions, which explicitly exclude certain types of pay from the definition of "regular rate." 29 U.S.C. § 207(e). Two of those statutory exclusions are relevant here: an employee's regular rate does not include discretionary bonuses or premium pay for work on weekends and holidays. *Id.* § 207(e)(3), (6).

Wisconsin's wage laws use the term "regular rate," too. *See, e.g.*, Wis. Stat. § 103.025(1); Wis. Admin. Code DWD § 274.03. But the state's statutes and regulations do not explicitly define the term. *Kuhnert v. Adv. Laser Mach., Inc.*, 2011 WI App 23, ¶ 12, 331 Wis. 2d 625, 794 N.W.2d 805. To determine what the term "regular rate" means, the court must interpret state law. The question here is whether the FLSA exceptions for discretionary bonuses and for weekend and holiday premium pay apply under Wisconsin law.

When federal courts interpret state law, they are bound by controlling decisions of the state's highest court. *Mitchell v. Durham Enters., Inc.*, 99 F.4th 978, 987 (7th Cir. 2024). When there is no decision from the state supreme court that squarely controls, federal courts must predict how that court would rule. *USA Gymnastics v. Liberty Ins. Underwriters, Inc.*, 46 F.4th 571, 579 (7th Cir. 2022). Decisions from the state intermediate appellate courts are helpful guides; in many cases, decisions from the intermediate appellate courts "act as a

compass for how the state supreme court may rule." *Giovannelli v. Walmart Inc.*, 164 F.4th 1052, 1055 (7th Cir. 2026). But federal courts are not bound by the decisions of state intermediate appellate courts if "there is a convincing reason to predict the state's highest court would disagree." *In re Zimmer, NexGen Knee Implant Prods. Liab. Litig.*, 884 F.3d 746, 751 (7th Cir. 2018) (citation omitted).

The rules for statutory interpretation under Wisconsin law are consistent with the rules under federal law. The court begins with the text, giving the statutory language its "common, ordinary, and accepted meaning," unless the words have a technical or special meaning. *State ex rel. Kalal v. Cir. Ct. for Dane Cnty.*, 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110. Wisconsin courts interpret statutory language in the context in which it is used, considering it in relation to the language of surrounding or closely related statutes. *Id.*, ¶ 46. Wisconsin courts also consider any statutory purpose ascertainable from the text itself. *Id.*, ¶ 48.

In this case, the pertinent statute is Wis. Stat. § 103.025(1)(c), which provides the basic overtime rule under Wisconsin law. The statutory section provides:

> "Overtime compensation" means the compensation required to be paid for hours worked during periods that the department has classified . . . as periods to be paid for at the rate of at least 1.5 times an employee's regular rate of pay.

Wis. Stat. § 103.025(1)(c). The state's basic overtime rule ensures that overtime compensation is treated uniformly throughout the state. Wis. Stat. § 103.007(1). The rule also protects employees by requiring employers to pay a premium rate for any hours exceeding the workweek. Wis. Stat. § 103.02. But the underlying purposes of the state's overtime rule do not shed light on what the term "regular rate" means under state law.

The common meaning of "regular rate" in the overtime context would be the standard amount of money that an employee earns for each hour that he or she works. The problem is that the common meaning of "regular rate" is ambiguous. As this case demonstrates, reasonable people could disagree over whether the amount of money that an employee earns for each hour that he works includes *all* types of compensation that the employee receives (as plaintiffs contend) or only those types of compensation that he receives under ordinary circumstances (as defendants contend). Stated another way, reasonable people could disagree whether the term "regular rate" has the same meaning under state law as it does in the FLSA.

When, as here, a statutory term is ambiguous, Wisconsin courts turn to interpretive resources outside of the statutory text, including legislative history. *See Kalal*, 2004 WI 58, ¶¶ 49–50. The Wisconsin Legislature enacted Wis. Stat. § 103.025(1)(c) in 1994, but that's not the first time that state statutes used the term "regular rate" in the overtime-pay context. The term "regular rate" first appeared in an employment-regulations statute that limited the number of hours that women were allowed to work; the statute required employers to compensate women for certain "excess time . . . at the rate of one and one-half times the regular rates." Wis. Stat. § 103.02 (1945–46). In 1975, the Wisconsin Legislature amended Wis. Stat. § 103.02 to remove its gendered language. 1975 Wis. Act 94, § 48. As amended, the statute tasked the state's Department of Industry, Labor and Human Relations with promulgating regulations "classify[ing] such periods of time into periods to be paid for at regular rates and periods to be paid for at the rate of at least one and one-half times the regular rates." Wis. Stat. § 103.02 (1975–76).[1] In 1977, the Department promulgated an overtime-pay regulation,

---

[1] The state's Department of Workforce Development took over the task of promulgating overtime-related regulations in 1997. Wis. Stat. § 103.001(3) (1997–98).

which required employers to "pay to each employe time and one-half the regular rate of pay for all hours worked in excess of 46 hours per week." Wis. Admin. Code IND § 74.03 (1977).

Despite these developments, neither the Wisconsin Legislature nor the Department defined the term "regular rate" in the 50-year period between when the term first appeared in the state statutes until the state legislature enacted Wis. Stat. § 103.025(1)(c). During the same period, the term "regular rate" acquired a well-established meaning in federal law.

Congress enacted the FLSA in 1938 to address "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." Fair Labor Standards Act of 1938, Pub. L. No. 75-718, § 2(a), 52 Stat. 1060, 1060. From its inception, the FLSA required employers to pay their employees "at a rate not less than one and one-half times the regular rate at which he is employed" when they worked more than 40 hours in a workweek. *Id.* § 7(a)(3), 52 Stat. at 1063.

The original version of the FLSA did not define the term "regular rate." In *Bay Ridge Operating Co. v. Aaron*, 334 U.S. 446 (1948), the United States Supreme Court interpreted the FLSA to address the issue of whether certain types of compensation could be excluded from an employee's "regular rate." The Court held that the term "regular rate" did not include overtime pay, which it defined as "statutory excess compensation paid for work in excess of forty hours." *Bay Ridge Operating Co.*, 334 U.S. at 465. The Court reasoned that the effect of including overtime pay into an employee's regular rate "would be to allow overtime premium on overtime premium—a pyramiding that Congress could not have intended." *Id.* at 464. The Court distinguished overtime pay from other types of pay at a premium rate, holding that "a mere higher rate paid as a job differential or as a shift differential, or for Sunday or holiday work, is

not an overtime premium." *Id.* at 466. According to the Court, those types of premium pay had to be included in an employee's regular rate under the FLSA. *Id.* at 469.

In 1949, Congress amended the FLSA to define the term "regular rate," in part to follow the Court's *Bay Ridge* decision regarding overtime pay. In all material respects, the FLSA's definition of "regular rate" has not changed since 1949. Fair Labor Standards Amendments of 1949, Pub. L. No. 81-393, § 7, 63 Stat. 912, 913–15 (codified as amended at 29 U.S.C. § 207(e)).[2] But Congress went further than the Court: it explicitly excluded from an employee's "regular rate" premium pay for work on weekends and holidays. Thus the 1949 amendments abrogated part of the Supreme Court's *Bay Ridge* decision related to non-overtime premium pay, 29 U.S.C. § 207(e)(6).

As used in the FLSA, the term "regular rate" is a term of art. *Sharpe v. Cureton*, 319 F.3d 259, 270 (6th Cir. 2003). When the Wisconsin Legislature uses a legal term of art with a broadly accepted meaning, Wisconsin courts assume that the legislature adopted the broadly accepted meaning. *Friends of Frame Park, U.A. v. City of Waukesha*, 2022 WI 57, ¶ 23, 403 Wis. 2d 1, 976 N.W.2d 263 (plurality opinion) (citing *Mueller v. TL90108, LLC*, 2020 WI 7, ¶ 19, 390 Wis. 2d 34, 938 N.W.2d 566). Put differently, when phrases have a "peculiar meaning in the law," Wisconsin courts construe the phrases according to that meaning. Wis. Stat. § 990.01(1); *Weber v. Town of Saukville*, 209 Wis. 2d 214, 224, 562 N.W.2d 412, 416 (1997).

The Wisconsin Legislature used the same term of art ("regular rate") in the same context as in the FLSA (overtime compensation) to set the same minimum rate for overtime compensation as the FLSA (one and one-half times the employees' regular rate). Wis. Stat.

---

[2] Congress added the statutory exclusion in 29 U.S.C. § 207(e)(8) after the 1949 amendments.

§ 103.025(c). The court concludes that the Wisconsin Supreme Court would give the term "regular rate" the same meaning as it is defined in the FLSA.

Plaintiffs resist this conclusion, contending that the term "regular rate" has a different meaning under state wage laws than in the FLSA. To support their contention, plaintiffs cite one of the state's Department of Workforce Development's webpages, which addresses frequently asked questions about overtime. The webpage provides the following definition of "regular rate of pay": "all remunerations paid to or on behalf of the employee such as commissions, nondiscretionary bonus[es], premium pay, and piecework incentives." Hours of Work and Overtime Frequently Asked questions, Department of Workforce Development.[3] This definition of "regular rate" differs from the FLSA because it includes "premium pay." Although "premium pay" isn't defined by the Department, presumably it would include premium pay for work on weekends and holidays.

Plaintiffs assert that Wisconsin courts would adopt the Department's definition of "regular rate" rather than the FLSA's definition. True, state statutes charge the Department with "adopt[ing] reasonable and proper rules and regulations" related to state wage laws. Wis. Stat. § 103.005(1). Moreover, the Wisconsin Court of Appeals deferred to the Frequently Asked Questions guidance that plaintiffs cite here in *Kuhnert v. Advanced Laser Machining, Inc.*, 2011 WI App 23, 331 Wis. 2d 625, 794 N.W.2d 805. In *Kuhnert*, the court held that the Department's methodology for calculating overtime pay was entitled to great deference because it was "not contrary to the clear meaning of the applicable statutes and regulations." *Kuhnert*, 2011 WI App 23, ¶ 14.

---

[3] Available at: https://dwd.wisconsin.gov/er/laborstandards/overtimefaq.htm (last accessed June 1, 2026).

But the court is not persuaded that Wisconsin courts would adopt the Department's definition of "regular rate" for two reasons.

First, the Department's definition of "regular rate" appears on one of its webpages. By publishing the definition on its webpage, the Department implicitly represents to the public that it has considered and reached a conclusion about the meaning of "regular rate." But information on an agency webpage has not gone through the vetting process required under Chapter 227, and thus it lacks the bona fides of an agency regulation.

Second, Wisconsin courts no longer defer to an administrative agency's interpretation of statutory language. *See Tetra Tech EC, Inc. v. Wis. Dep't of Revenue*, 2018 WI 75, ¶ 108, 382 Wis. 2d 496, 914 N.W.2d 21; *see* Wis. Stat. § 227.57(11) (state courts "shall accord no deference to the agency's interpretation of law"). Consequently, the Department's interpretation of the term "regular rate" doesn't bind Wisconsin courts. *Amazon Logistics, Inc. v. Lab. & Indus. Rev. Comm'n*, 2023 WI App 26, ¶ 130, 407 Wis. 2d 807, 992 N.W.2d 168. Rather than defer to the Department's definition, Wisconsin courts would consider the issue de novo applying traditional statutory interpretation principles. *Radtke v. Lab. & Indus. Rev. Comm'n*, 2025 WI App 14, ¶ 18, 415 Wis. 2d 347, 18 N.W.3d 187. That's the approach the court took here.

In any event, the court could not accept the Department's definition of "regular rate" at face value. Because the Department leaves the term "premium pay" undefined, the Department's definition of "regular rate" would also include overtime compensation, which is a form of premium pay. This would cause the same "pyramiding" effect that the Supreme Court discussed in *Bay Ridge*. The state legislature could not have intended to "allow overtime premium on overtime premium." *Bay Ridge Operating Co.*, 334 U.S. at 464.

Plaintiffs also resist the court's conclusion that the term "regular rate" has the same meaning under state law and the FLSA because they contend that Wisconsin has not adopted the FLSA's enumerated exclusions of certain types of compensation from an employee's "regular rate." *See* Dkt. 26, at 11–14. To support their contention, plaintiffs cite two Wisconsin Supreme Court decisions addressing differences between state wage law and the FLSA: *Kieninger v. Crown Equipment Corp.*, 2019 WI 27, 386 Wis. 2d 1, 924 N.W.2d 172; and *Piper v. Jones Dairy Farm*, 2020 WI 28, 390 Wis. 2d 762, 940 N.W.2d 701.

In *Kieninger*, the court considered whether state law required employers to pay their employees for the time they spent driving a company-provided vehicle between their homes and their jobsites. *Kieninger*, 2019 WI 27, ¶ 1. The court held that neither state statutes nor regulations required employers to compensate their employees for that travel time. *Id.*, ¶ 33. The court also rejected the parties' arguments that the court must construe state regulations consistently with their federal counterparts, disregarding as unpersuasive an on-point federal court decision. *See id.*, ¶¶ 26–32. The court reasoned that "the federal judiciary can, and often does, provide helpful insights when it analyzes federal provisions analogous to our own," but federal court decisions on matters of state law are not binding on state courts. *Id.*, ¶ 27.

In *Piper*, the court considered whether state law allowed parties to engage in collective bargaining to modify or eliminate the requirement that employees be compensated for donning and doffing personal protective equipment. *Piper*, 2020 WI 28, ¶ 16. The court held that it could not. *Id.*, ¶ 3. The court reasoned that state law prohibits employers from contractually avoiding their obligation to pay their employees for all compensable time. *Id.*, ¶ 20. The court also reasoned that there is no equivalent to the FLSA's provision allowing collective bargaining over compensation for donning and doffing, 29 U.S.C. § 203(o). As a result, the court

9

concluded that federal law was not relevant to determining the meaning of the regulation at issue. *Id.*, ¶ 23.

Plaintiffs are correct that there is no state statute or regulation that is equivalent to the FLSA's definition of "regular rate." But that is beside the point: there is no state statute or regulation that provides *any* definition for the term "regular rate." If Wisconsin had defined "regular rate" as "all remuneration for employment paid to, or on behalf of, the employee" (the first part of the FLSA's definition of "regular rate") but did not include the FLSA's enumerated exceptions, then that would suggest that Wisconsin intended to depart from the FLSA regarding the meaning of the term "regular rate." In that case, *Piper* would instruct that the FLSA's definition of "regular rate" is not relevant to determining the meaning of the term under state law. Rather than take this approach, the Wisconsin Legislature used a term of art with a well-established meaning and provided no indication that it intended the term to mean something different than in the FLSA.

In conclusion, the term "regular rate" has the same meaning under the FLSA and state wage laws. This means that, under state wage laws, an employee's regular rate doesn't include the types of compensation excluded from an employee's regular rate in the FLSA. Because the federal and state law definitions of "regular rate" are the same, the court can address plaintiffs' FLSA claims and their state wage law claims together.

## B.  Motion to dismiss part of the second amended complaint

Plaintiffs assert that Sub-Zero miscalculated its employees' regular rates of pay in five ways, only two of which are at issue for Sub-Zero's motion to dismiss. Plaintiffs contend that Sub-Zero violated the FLSA and state wage laws because it failed to factor into its employees'

regular rates: (1) the premium pay that Sub-Zero's employees received for work on Saturdays; and (2) the cost-of-living adjustment that Sub-Zero paid its employees.

Sub-Zero moves to dismiss plaintiffs' claims related to these two issues. Dkt. 20. (Plaintiffs move for leave to file a sur-reply brief, Dkt. 33, and the court will grant the motion.)

As a preliminary matter, plaintiffs contend that the court should deny Sub-Zero's motion to dismiss because it improperly seeks to dismiss parts of claims based on legal theories rather than entire claims, as required by Federal Rule of Civil Procedure 12(b)(6). Dkt. 26, at 1–5. A claim is the "set of operative facts that produce an assertable right in court and create an entitlement to a remedy." *St. Augustine Sch. v. Underly*, 78 F.4th 349, 352 (7th Cir. 2023). The essential question when considering a motion to dismiss is whether a discrete set of facts raises a right to relief under a discernable legal theory. *See Signal Funding, LLC v. Sugar Felsenthal Grais & Helsinger LLP*, 136 F.4th 718, 724 (7th Cir. 2025). Sub-Zero moves to dismiss claims based on two sets of facts, contending that they do not raise a right to relief under *any* legal theory, so Sub-Zero's motion isn't an improper attack on a particular legal theory.

### 1. Premium pay

The court begins by clarifying the terminology that the parties use in their briefs. In their briefs, the parties use the term "mandatory overtime pay" to refer to an employee's compensation for required work on Saturdays that exceeds a forty-hour workweek *and* to refer to premium pay for Saturday work. *See, e.g.*, Dkt. 26, at 6. The problem is that overtime pay and premium pay are distinct concepts. And sometimes overtime work or work on weekends is mandatory, which adds yet a third separate concept.

The term "overtime pay" refers to compensation for a workweek longer than forty hours. 29 U.S.C. § 207(a)(1); Wis. Admin. Code DWD § 274.01(4). Under federal and state law,

11

overtime pay must be at least one and one-half times the employee's regular rate. 29 U.S.C. § 207(a)(1); Wis. Stat. § 103.025(c). Because an employee's overtime pay depends on his regular rate of pay, his overtime pay is not part of his regular rate. 29 U.S.C. § 207(e)(5).

The term "premium pay" refers to extra compensation at a premium rate. 29 U.S.C. § 207(e)(6)–(7). Like overtime pay, certain types of premium pay are excluded from an employee's regular rate of pay. Specifically, an employee's regular rate does not include premium pay for weekends and holidays. *Id.* § 207(e)(6). Nor does it include premium pay for hours outside the regular workday or workweek. *Id.* § 207(e)(7).

Plaintiffs' collective bargaining agreement reflects these provisions. As for overtime pay, the agreement requires Sub-Zero to compensate bargaining unit members for "all work performed in excess of forty hours in any one payroll week . . . at the rate of one and one-half times the employee's regular rate of pay." Dkt. 23, Ex. 1, at 9 (cleaned up).[4] As for premium pay, the agreement requires Sub-Zero to provide premium pay for voluntary work on Saturdays (at the rate of one and one-half times the employee's regular rate) and for work on Sundays and holidays (at the rate of two times the employee's regular rate). *Id.*

With these clarifications in mind, the court turns to considering whether plaintiffs' claims related to premium pay state a claim for relief. Plaintiffs contend that Sub-Zero miscalculated its employees' regular rates of pay because it didn't factor into those rates the premium pay that Sub-Zero's employees received for work on Saturdays. Sub-Zero contends that it properly excluded the premium pay, so plaintiffs' allegations related to premium pay fail to state a claim for relief.

---

[4] Citations to filings from the docket use the page numbers assigned by the court's electronic filing system, not the page numbers in the original document.

The FLSA and state wage laws don't consider to be part of an employee's "regular rate" the premium pay that they receive for work on weekends and holidays. Under 29 U.S.C. § 207(e)(6), an employee's "regular rate" doesn't include:

> [E]xtra compensation provided by a premium rate paid for work by the employee on Saturdays, Sundays, holidays, or regular days of rest, or on the sixth or seventh day of the workweek, where such premium rate is not less than one and one-half times the rate established in good faith for like work performed in nonovertime hours on other days[.]

29 U.S.C. § 207(e)(6). This means that when an employer chooses to pay its employees a premium rate for work on weekends and holidays, the employer doesn't need to factor that pay into its employees' regular rate.

That's what Sub-Zero did here: it gave its employees extra pay for working on Saturdays, even if the Saturday work was not overtime work. Sub-Zero didn't violate the FLSA or state wage laws by excluding premium pay for work on Saturdays from its employees' regular rates.

Plaintiffs resist this conclusion, contending that § 207(e)(6) doesn't apply because Sub-Zero provided plaintiffs premium pay for Saturday work because the work is mandatory and inconvenient. *See* Dkt. 26, at 5–9. Plaintiffs argue that, because Sub-Zero provided premium pay for reasons other than that the work happened on a Saturday, the premium pay must be included within Sub-Zero's employees' regular rates.

Plaintiffs assert that their argument finds support in the court of appeals' decision in *Howard v. City of Springfield*, 274 F.3d 1141 (7th Cir. 2001), which involved a closely analogous FLSA exception, § 207(e)(7). In *Howard*, an employer provided premium pay for work from midnight to 6 a.m., a period outside the regular hours, because it believed that working during those hours was undesirable. 274 F.3d at 1147. The court held that the employer's policy didn't satisfy § 207(e)(7), which applies to premium pay for work outside the regular

13

workweek, because rather than having a policy of providing premium pay for *all* work outside regular hours, the employer provided it only for hours that it found particularly undesirable. *Id.*

Unlike the policy in *Howard*, Sub-Zero's policy *does* match the § 207(e)(6) exception for weekend and holiday work. Sub-Zero provides premium pay for *all* non-overtime work on Saturdays, not just for certain particularly undesirable hours on Saturdays. Plaintiffs' allegations about failing to include premium pay in the calculation of an employee's regular rate fail to state a claim for relief under the FLSA. And because the court concludes that the same premium pay exception would apply under Wisconsin law, plaintiffs also fail to state a claim for relief on that theory under Wisconsin law.

### 2. Cost-of-living-adjustment payments

Plaintiffs also contend that Sub-Zero miscalculated its employees' regular rates of pay by failing to factor into those rates the cost-of-living-adjustment payments that Sub-Zero gave its employees. Sub-Zero contends that it properly excluded the payments because they were discretionary bonuses.

The FLSA and state wage laws exclude from an employee's "regular rate" any bonuses that are at their employer's sole discretion. Under 29 U.S.C. § 207(e)(3), an employee's "regular rate" excludes:

> Sums paid in recognition of services performed during a given period if either, both the fact that payment is to be made and the amount of the payment are determined at the sole discretion of the employer at or near the end of the period and not pursuant to any prior contract, agreement, or promise causing the employee to expect such payments regularly[.]

29 U.S.C. § 207(e)(3). This means that when an employer gives its employee a discretionary bonus for a job well done, the employer doesn't have to factor that pay into its employee's regular rate.

14

Plaintiffs have alleged facts showing that Sub-Zero's cost-of-living-adjustment payments were not discretionary bonuses. Under the terms of plaintiffs' collective bargaining agreement, if certain inflationary conditions are met, Sub-Zero must meet with the union to discuss a wage adjustment for the following year. Dkt. 23, Ex. 1, at 49. Plaintiffs allege that, during those negotiations, Sub-Zero offered to make a lump-sum payment "in lieu of granting a wage increase to bargaining unit members for the following year." Dkt. 19, ¶ 28. In a memorandum discussing the lump-sum payment, Sub-Zero stated that it "decided to pay all Built-In bargaining unit employees a lump sum bonus in the amount of $2,200.00 to help offset the cost of inflation." Dkt. 23, Ex. 2, at 2. Plaintiffs also allege that, in August 2022, Sub-Zero gave its employees a lump-sum payment, which consisted of the "average wage rate earned by Sub-Zero employees of about $26 per hour, multiplied by 4.1 percent, and multiplied by 2,080 hours." *Id.*, ¶ 26. The court infers from these allegations that the lump-sum payments were not "in recognition of services performed during a given period," but rather, to address the increase in the cost of living due to inflation. It is also reasonable to infer that the lump-sum payments were not "at the sole discretion of [Sub-Zero]" because plaintiffs' collective bargaining agreement required Sub-Zero and the union to meet and discuss an appropriate wage adjustment.

Accepting plaintiffs' allegations as true, Sub-Zero violated the FLSA and state wage laws by improperly excluding the lump-sum payments from its employees' regular rates of pay. Sub-Zero increased its employees' basic compensation by giving them lump-sum payments, effectively increasing pay rates. But Sub-Zero did not use its employees' increased pay rates to calculate their overtime compensation. Sub-Zero cannot avoid paying its employees overtime compensation on their increased pay rates by deeming the lump-sum payments to be bonuses.

15

Under both state and federal law, plaintiffs state a claim for relief based on their allegations related to Sub-Zero's cost-of-living-adjustment payments.

## C.  Motion for leave to file third amended complaint

Plaintiffs move for leave to file a third amended complaint. Their proposed third amended complaint makes only one major change. In plaintiffs' second amended complaint, the allegations related to premium pay were limited to mandatory overtime work on Saturdays. Plaintiffs want to amend their complaint to include allegations related to non-mandatory work on Saturdays, Sundays, and holidays. Dkt. 24, at 1. The court has determined that plaintiffs' allegations related to premium pay fail to state a claim for relief, so the court will deny plaintiffs' motion for leave to file a third amended complaint as futile.

## D.  Motion for approval of notice to proposed collective

Plaintiffs move for approval of notice to be sent to their proposed collective under the FLSA. Section 216(b) of the FLSA authorizes plaintiffs to bring "collective actions" against employers to recover unpaid compensation for themselves and on behalf of "other employees similarly situated." 29 U.S.C. § 216(b). To identify other similarly situated employees, a plaintiff may ask a district court to approve notice of the pending action to the proposed collective. *Cf. Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 169–74 (1989) (ADEA context). Before a district court may approve notice, a plaintiff must "make a threshold showing that there is a material factual dispute as to whether the proposed collective is similarly situated." *Richards v. Eli Lilly & Co.*, 149 F.4th 901, 913 (7th Cir. 2025). This means that a plaintiff must produce "some evidence" that he and the members of the proposed collective are "victims of a common unlawful employment practice or policy." *Id.* Stated another way, the court must make a preliminary determination about whether the employees are similar in ways so that it

16

makes sense to decide their claims in the same lawsuit. *Dyer v. Skogen's Foodliner, Inc.*, No. 25-cv-322-jdp, 2026 WL 381878, at *4 (W.D. Wis. Feb. 11, 2026).

In light of the court's decision on Sub-Zero's motion to dismiss, plaintiffs now challenge four allegedly unlawful practices: (1) Sub-Zero didn't include sign-on bonuses within its employees' regular rates of pay; (2) Sub-Zero miscomputed overtime pay during workweeks in which plaintiffs received straight-time pay for 40 hours of work, overtime pay, and incentive pay; (3) Sub-Zero didn't include its cost-of-living-adjustment payments within its employees' regular rates of pay; and (4) Sub-Zero didn't include within the number of hours worked the hours that maintenance assistants spent training to become maintenance mechanics. Dkt. 34, at 1–2. Sub-Zero doesn't deny that it treats all employees subject to the above practices the same way, *see* Dkt. 37, at 20–25, 31–35, which suggests that authorizing notice is appropriate, *see Reilly v. Century Fence Co.*, No. 18-cv-315-jdp, 2018 WL 6573460, at *8 (W.D. Wis. Dec. 13, 2018).

But there are problems with the scope of plaintiffs' proposed collective. Plaintiffs ask the court to authorize their counsel to send notice of this lawsuit to all hourly paid Sub-Zero employees who are, or during the past three years were, members of the bargaining unit represented by Sheet Metal Workers Local 565. Dkt. 34, Ex. 1, at 1. Sub-Zero contends that plaintiffs' proposed collective is overly broad for two reasons. *See* Dkt. 37, at 20–25, 31–35.[5]

First, Sub-Zero contends that the proposed collective is overly broad because it includes employees going back three years. Sub-Zero argues that a three-year statute of limitations

---

[5] The scope of the proposed collective also might be underinclusive. It isn't clear whether Sub-Zero applies the challenged practices to all hourly employees or just those employees who are members of the union.

applies only to willful violations, and plaintiffs "have identified no evidence of willfulness that would justify extending the statute of limitations beyond the standard two-year period." Dkt. 37, at 39. That is a merits issue, so it is premature to consider it now. Plaintiffs have alleged willful violations in their complaint, Dkt. 19, ¶ 72, which is all they were required to do at this point. *Luna Vanegas v. Signet Builders, Inc.*, No. 21-cv-54-jdp, 2023 WL 4926237, at *10 (W.D. Wis. Aug. 2, 2023). If Sub-Zero believes that plaintiffs cannot prove willfulness, it may move for summary judgment on that issue.

Second, Sub-Zero contends that the proposed collective is overly broad because not all employees within the proposed collective are subject to the challenged practices. Indeed, plaintiffs don't explain why notice must go out to all hourly paid Sub-Zero employees who are or were recently members of the union, regardless of whether they received a sign-on bonus, received incentive pay, received a cost-of-living-adjustment payment, or trained to be a maintenance mechanic, which are the pertinent facts underlying the challenged practices. District courts may not authorize notice to employees who aren't eligible to join the action. *See Bigger v. Facebook, Inc.*, 947 F.3d 1043, 1048–51 (7th Cir. 2020). To avoid sending notice to ineligible employees, district courts may postpone authorizing notice to resolve discrete similarity disputes, which promotes efficient case management and ensures that the notice is properly tailored. *Richards*, 149 F.4th at 913–14.

Determining which Sub-Zero employees are subject to the challenged practices is an issue that can be resolved swiftly and conclusively before providing notice. The court orders the parties to meet and confer regarding this issue. The parties may have until June 15, 2026, to file a status report detailing the names and addresses of all hourly paid Sub-Zero employees who: (1) received a sign-on bonus; (2) received straight-time pay for 40 hours of work, overtime

pay, and incentive pay during a workweek; (3) received a cost-of-living-adjustment payment; or (4) were maintenance assistants and spent time training to become maintenance mechanics. The parties should also indicate whether these employees are, or during the past three years were, members of the bargaining unit represented by Sheet Metal Workers Local 565.

To allow the parties time to meet and confer, the court will reset the deadline for filing motions to certify a proposed collective or putative class to August 31, 2026.

ORDER

IT IS ORDERED that:

1. Plaintiffs Ian Nelson and Brandon Wagner's motion for leave to file a sur reply brief regarding defendant Sub-Zero's motion to dismiss, Dkt. 33, is GRANTED.

2. Sub-Zero's motion to dismiss plaintiffs' amended complaint in part, Dkt. 20, is GRANTED in part. The motion is granted as to plaintiffs' claim involving premium pay. The motion is denied as to plaintiffs' claim involving Sub-Zero's lump-sum payment.

3. Plaintiffs' motion for leave to file a third amended complaint, Dkt. 24, is DENIED.

4. The parties may have until June 15, 2026, to meet and confer and submit a status report identifying which Sub-Zero employees are subject to the challenged practices.

5. The deadline for filing motions to certify a proposed collective or putative class is RESET to August 31, 2026.

Entered June 1, 2026.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge

19